UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| TA'VORREOUS KEON FLEMING | CIVIL ACTION NO. 25-168-P |
| VERSUS | JUDGE HICKS |
| VICTOR LLANITO, ET AL. | MAGISTRATE JUDGE HORNSBY |

REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Ta'Vorreous Keon Fleming ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this court on February 10, 2025. Plaintiff was incarcerated at the Bossier Maximum Security Center in Plain Dealing, Louisiana when he filed this complaint. He names Bondsman Victor Llanito, Fugitive Agent John Doe, and Assistant Jane Doe as defendants.

Plaintiff states that on June 30, 2022, he had his legal notice and demand notarized. He then took his legal notice and demand to Victor Llanito at the SBC Bail Bonds office. He claims later that day, his fiancée's grandmother and his mother-in-law called his fiancée to tell her that Llanito called them and said negative things to them because of the paperwork he had served him.

Plaintiff claims he then call Llanito and got into a heated argument with him. He told Llanito that his business was with him, and he should only speak to him. He claims Llanito cursed him and hung up on him. He claims Llanito then called his fiancée and told her to tell him that if he called him again, he would make them pay. Plaintiff called Llanito and Llanito told him to come to his office to resign the bond documents. He told Llanito that he would come when his fiancée got home.

Plaintiff claims Llanito then showed up at his house with a fugitive agent to help arrest him. He claims the fugitive agent came to his backyard where he was with his fiancée and children. The fugitive agent called Llanito to the backyard. Llanito told him that he had to arrest him and take him to jail. He claims Llanito did not state the reason for arresting him and told him that he did not need a warrant to arrest him. Plaintiff told Llanito that there was no reason to arrest him because he had not breached their contract and was not arrested while on bond.

Plaintiff claims he was holding his three-week-old son when Llanito attacked him by rushing him, pushing him into the wall, and choking him. He claims that when his fiancée grabbed their son, Llanito attempted to slam him on the ground, tried to trip him, and kicked him in the legs. He claims Llanito then elbowed him in his back in an attempt to get his hands behind his back. He claims that at that moment, the fugitive agent rushed over to assist Llanito. He claims the fugitive agent grabbed his right arm while Llanito held his left arm. He claims Llanito then tasered him three times across the left side of his chest. He claims Llanito also tasered his back and the left side of his body. He claims

Llanito held the taser on his back until his left arm went numb. He claims Llanito then handcuffed him. He claims Llanito and the fugitive agent dragged him to the car, placed him in the backseat, and put the seatbelt around him. He claims Llanito made offensive remarks about his fiancée and her mother.

Plaintiff claims Llanito made a U-turn and returned to his house. He claims Llanito jumped out of the car and grabbed papers that were on the ground. They then drove off again. He claims Llanito pointed his firearm at him the entire time they were driving to his office.

Plaintiff claims that when they arrived at the office, Llanito sat him in a chair. He claims the fugitive agent and two female assistants who worked for SBC Bail Bonds were at the office. He claims that before they could leave to go to the Bossier Maximum Security Center, his sister and her fiancée entered the office. Llanito then escorted him out of the office. Plaintiff claims the Shreveport Police were called by his sister and were waiting for them at the front door of the building. Llanito told the officers that he was surrendering Plaintiff to the Bossier Sheriff's Department. Plaintiff told the officers that Llanito falsely arrested him. He claims the officers told him that Llanito, as his bondsman, had the right to arrest him and left.

Plaintiff claims Llanito told him that he was arresting him because he did not like the paperwork he had given him. Llanito placed him in his car and put the seatbelt on him. Plaintiff claims that while driving to the Bossier Maximum Security Facility, Llanito made numerous racial remarks toward him, his fiancée, and his mother in law. He told Llanito

that his arrest was illegal. He claims Llanito then filmed him and posted him on his snapchat feed.

Plaintiff claims that when they arrived at the Bossier Maximum Security Facility, Llanito explained to the booking deputy that he was surrendering him off his bond because he had failed to check in with him and failed to pay him. Plaintiff claims he was only out on bond for one and a half months. He claims he checked in with Llanito by phone every Monday. He also claims that he paid Llanito once during this time.

Plaintiff asked Llanito for a refund of his premium and the three car titles he gave him. He claims Llanito told him that he could not have a refund. He claims Llanito paid the money for surrendering him back to the Sheriff's custody, completed the paperwork, and left the facility. He claims Llanito never told him or gave him notice that he was due a refund of the premium paid to SBC Bail Bonds and its surety.

Plaintiff claims he never received a court hearing to establish if the surrender was legal. He claims probable cause was not shown to determine if the surrender was legal.

Plaintiff was rebooked at the Bossier Maximum Security Center. He called his fiancée, and she informed him that Llanito told her that he would not be returned any money and that he still owed him approximately $16,000.00.

Plaintiff attempted to bond out again, but no bondsman agency would bond him out because of the surrender by SBC Bail Bonds. He complains that he was forced to fight his case from jail. He also complains that he missed his daughter's birthday and seeing his son grow as an infant.

Plaintiff claims he was forced to take a sentence of ten years because he could not properly fight his case while in jail. He pleaded guilty to a 2016 charge of convicted felon in possession of a firearm. He claims he was forced to serve two years of his sentence from 2022 to 2024 in prison.

After Plaintiff was released from incarceration, his fiancée informed him that Llanito and SBC Bail Bonds were threatening her and forcing her to pay $400.00 every month since Llanito surrendered off his bond. He claims Llanito threatened to confiscate the three cars if his fiancée did not pay him the $400.00. He claims Llanito was arrested in 2024 for a similar crime of extortion.

Plaintiff claims Llanito used excessive force against him when he arrested him and violated his rights under the Eighth Amendment. He claims Llanito caused him pain, suffering, physical injury, and emotional distress. Plaintiff claims Llanito breached the implied contract with him by lying about the reason he surrendered him to the Sheriff's custody and illegally arresting him when he had not breached the contract or been arrested for a new charge. He claims Llanito violated his rights under the Fifth and Fourteenth Amendments and caused him suffering and emotional distress. Plaintiff claims Llanito threatened him with physical violence for exercising his right to present legal documentation to a state employee. He claims Llanito retaliated against him in violation of his rights under the First Amendment.

Plaintiff claims Fugitive Agent John Doe witnessed Llanito's illegal action, failed to correct the misconduct, and encouraged the continuation of the misconduct. He claims

Fugitive Agent John Doe violated his rights under the Eighth Amendment and caused him pain, suffering, physical injury, and emotional distress.

Plaintiff claims Assistant Jane Doe witnessed Llanito's illegal action, failed to correct the misconduct, and encouraged the continuation of the misconduct. He claims Assistant Jane Doe violated his rights under the Eighth Amendment and caused him pain, suffering, physical injury, and emotional distress.

Accordingly, Plaintiff seeks declaratory and injunctive relief, compensatory, nominal, and punitive damages, a complete refund of the premium paid to SBC Bail Bonds and its surety, restitution of all money paid to Llanito and SBC Bail Bonds, cost of this suit, and any additional relief the court deems just, proper, and equitable.

## LAW AND ANALYSIS

**Prescription**

Plaintiff complains that on June 30, 2022, Victor Llanito and Fugitive Agent John Doe arrested him. He claims Llanito did not tell him the reason for his arrest, but did tell him that he did not need a warrant to arrest him. He complains that excessive force was used against him during the arrest. He complains that Llanito breached their implied contract. Plaintiff claims Fugitive Agent John Doe and Assistant Jane Doe witnessed Llanito's illegal action, failed to correct the misconduct, and encouraged the continuation of the misconduct.

In <u>Wilson v. Garcia</u>, 471 U.S. 261 (1985), the Court articulated the guidelines to be used in determining what prescriptive period should apply to Section 1983 claims. The

Court determined "§ 1983 claims are best characterized as personal injury actions" and the forum state's statute of limitations applicable to such claims should be used. Id. at 280. In Gates v. Spinks, 771 F.2d 916 (5th Cir. 1985), the Fifth Circuit Court of Appeals phrased the test as: "The state statute governing the general tort remedy for personal injuries should apply to 1983 actions . . ." Gates, 771 F.2d at 919.

The Louisiana Civil Code provides a general prescriptive statute that governs tort actions. The article subjects delictual actions to a liberative prescription of one year. See La. C.C. art. 3492.[1] The Fifth Circuit qualified this prescriptive period, however, when it held that "a section 1983 action accrues and the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis for the action." Watts v. Graves, 720 F.2d 1416, 1417 (5th Cir. 1983).

Plaintiff claims his civil rights were violated by Defendants on June 30, 2022. Thus, prescription began to run as to these claims on June 30, 2022. The above entitled and numbered complaint was not signed by Plaintiff until January 22, 2025, and it was not filed by the Clerk of Court until February 10, 2025. Plaintiff's claims are therefore prescribed.

Accordingly, Plaintiff's civil rights complaint should be dismissed as frivolous.

---

[1] La. C.C. art. 3492 was repealed by Acts 2024, No. 423, § 2, eff. July 1, 2024. Section 3 of Acts 2024 provides "The provisions of the Act shall be given prospective application only and shall apply to delictual actions after the effective date of this Act." Thus, La. C.C. art. 3492 is still applicable as to this complaint.

**State Actors**

Plaintiff names Bondsman Victor Llanito, Fugitive Agent John Doe, and Assistant Jane Doe as defendants. Section 1983 prescribes redress for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. See 42 U.S.C. § 1983. A plaintiff in a civil rights suit must show that the conduct of which he is complaining was committed by a person acting under color of state law. Plaintiff has not alleged any action that would give rise to defendants Bondsman Victor Llanito, Fugitive Agent John Doe, and Assistant Jane Doe being state actors for purposes of Section 1983.

In certain circumstances, bail bondsmen act under color of state law and are subject to suit under Section 1983. See Landry v. A–Able Bonding Inc., 75 F.3d 200, 204–05 (5th Cir.1996) (citing Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982)). For a bail bondsman to act under color of state law, he must be licensed by the state to make arrests, and he must make the arrest pursuant to an arrest warrant and with the assistance of law enforcement officers. See Johnson V. Cowthorn, CIV.A. 14-3038-P, 2015 WL 6441434, at 1 (W.D. La. Oct. 21, 2015) (citing Landry v. A–Able Bonding Inc., 75 F.3d 200, 204–05 (5th Cir.1996). Plaintiff does not allege that Llanito possessed an arrest warrant for him at the time that he was arrested and surrendered to the Bossier Maximum Facility. In fact, Plaintiff claims Llanito told him that he did not need a warrant to arrest him. Furthermore, Plaintiff does not allege that Llanito attempted to enlist the assistance of local law enforcement officials to seize him. Based on the facts of Plaintiff's complaint, the Defendants are not state actors

under § 1983 because they did not act under color of state law when they seized him and allegedly breached the terms of their contract. See Landry v. A-Able Bonding, Inc., 75 F.3d 200, 204–05 (5th Cir.1996).

Accordingly, Plaintiff's civil rights complaint should be dismissed as frivolous.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an

extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party.  See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 21st day of March, 2025.

                                                           Mark L. Hornsby
                                                           U.S. Magistrate Judge